4 P.3d 388

The STATE of Arizona, Appellee/Respondent,

v.

Andre Scott SMITH, Appellant/Petitioner.

Nos. 2CA–CR97–0130, 2CA–CR98–0346–PR.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 23, 1999.

Review Denied May 23, 2000.

Janet Napolitano, Arizona Attorney General Tucson By Paul J. McMurdie and Diane M. Acosta, for Appellee/Respondent.

Timothy B. Dickerson, P.C. By Timothy B. Dickerson, Sierra Vista, for Appellant/Petitioner.

DRUKE, Judge.

¶ 1 Appellant Andre Smith and his companions attacked and severely beat two men in a park in Sierra Vista, Arizona. An eight-person jury found Smith guilty of two counts of aggravated assault with a deadly weapon or dangerous instrument, and the trial court sentenced him to concurrent, presumptive, 7.5–year prison terms. After Smith filed a notice of appeal from his convictions and sentences, he sought post-conviction relief pursuant to Rule 32, Ariz. R.Crim. P., 17 A.R.S., claiming he had not waived the right to a twelve-person jury and had received ineffective assistance of counsel. We stayed the appeal pursuant to Rule 31.4(a)(1), Ariz. R. Crim P., and revested jurisdiction in the trial court for the post-conviction proceedings. See Ariz. R.Crim. P. 31.11 and 32.2.

After an evidentiary hearing solely on the issue of whether Smith had waived his right to a twelve-person jury, the trial court denied post-conviction relief. Smith then filed a petition for review pursuant to Rule 32.9(c), Ariz. R.Crim. P. We vacated our stay, revested jurisdiction in this court, and consolidated the appeal and petition for review pursuant to Rule 31.4(b)(2), Ariz. R.Crim. P. We have jurisdiction over both matters pursuant to A.R.S. § 12–120.21.

## Appeal

¶ 2 On appeal, Smith contends the trial court incorrectly denied his motion to suppress the statements he made to police, arguing he was in custody at the time he made them and had not been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We review for clear and manifest error a trial court's ruling on a motion to suppress evidence, *State v. Weinstein*, 190 Ariz. 306, 947 P.2d 880 (App.1997), and will uphold its ruling absent an abuse of discretion. *State v. Bentlage*, 192 Ariz. 117, 961 P.2d 1065 (App.1998). We view the evidence presented at the suppression hearing and the reasonable inferences from that evidence in the light most favorable to upholding the trial court's ruling. *State v. Spears*, 184 Ariz. 277, 908 P.2d 1062 (1996). Although the trial court determines the credibility of the witnesses, we review its legal decisions de novo. *State v. Omeara*, 297 Ariz. Adv. Rep. 3, 197 Ariz. 328, 4 P.3d 383 (Ct.App. June 15, 1999).

¶ 3 The evidence presented at the suppression hearing established that a detective and two uniformed police officers went to Smith's home to arrest him on the assault charges. The detective surreptitiously tape-recorded the conversations that took place at the home. The police were met at the door by Smith's younger brother, who let them in and directed them to the kitchen, where Smith was talking on the telephone while standing near the sink and shaving his head. After the detective told Smith they were there "investigating an assault that took place in the park a week ago," Smith responded: "I wasn't in the park. I already heard about it,

but I was nowhere near the park." Smith added that he and his older brother had been at the movie theater and that they had arrived about 6:40 p.m. and saw the "Thin Line." After Smith answered a few additional questions, he was arrested on the assault charges and taken to the police station, where he was advised of his *Miranda* rights. Smith invoked his rights and refused' to answer any further questions. After the trial court denied Smith's motion to suppress the statements made at home, it allowed the jury to hear the tape recording of Smith's pre-arrest statements.

¶ 4 Statements made by a defendant in custody are inadmissible at trial unless the defendant has been advised of and waived his or her *Miranda* rights. *See State v. Spreitz*, 190 Ariz. 129, 945 P.2d 1260 (1997); *State v. Stanley*, 167 Ariz. 519, 809 P.2d 944 (1991). An objective test is used to determine whether the defendant was in custody, that is, "whether under the totality of the circumstances a reasonable person would feel that he was in custody or otherwise deprived of his freedom of action in a significant way." *State v. Carter*, 145 Ariz. 101, 105, 700 P.2d 488, 492 (1985); *see also Spreitz; Stanley*. Smith argues that consideration of the factors set forth in *Carter* show that he was in custody when he made his pre-arrest statements. We disagree.

¶ 5 In *Carter*, the supreme court declared that "factors strongly indicative of custody include: 1) whether the objective indicia of arrest are present, 2) the site of the interrogation, 3) the length and form of the investigation, and 4) whether the investigation had focused on the accused." 145 Ariz. at 105, 700 P.2d at 492; *see also Stanley*. Although the evidence at the suppression hearing clearly established the fourth factor (the investigation had focused on Smith), it failed to establish the remaining three factors. First, there was no evidence the police objectively indicated that Smith was under arrest before he made his statements. They did not draw any weapons, handcuff Smith, or otherwise deprive him of his freedom of action. Second, Smith's pre-arrest statements were made in his own home, rather than in the coercive environment of a police

station. *See Carter* (questioning at police station enhances coercive nature of interrogation). And third, the detective's exchange with Smith was brief and noncoercive. The detective did not interrogate Smith, but simply stated he was investigating an assault that had taken place in the park; Smith promptly volunteered an explanation of his whereabouts. We thus conclude, based on the factors in *Carter*, that Smith was not in custody when he made his pre-arrest statements. A reasonable person in Smith's circumstances would not have felt "he was in custody or otherwise deprived of his freedom of action in a significant way." *Carter*, 145 Ariz. at 105, 700 P.2d at 492. Accordingly, we affirm the trial court's denial of Smith's motion to suppress his statements.

### Petition for Review

¶ 6 Smith contends both on appeal and, more properly, in his petition for review that his trial before an eight-person jury constituted fundamental error. Smith argued in his Rule 32 petition he had a constitutional right to a twelve-person jury and had not waived that right. In response, the state claimed that, after consulting with Smith before jury selection, Smith's trial counsel had stipulated with the state to the imposition of concurrent sentences and, thus, to an eight-person jury. The trial court agreed with the state's position and summarily denied post-conviction relief, although the court acknowledged that Smith had not participated in the stipulation but "assume[d] defendant was informed and concurred [because] the issue was not thereafter raised prior to the selection of the jury." Smith moved for a rehearing pursuant to Rule 32.9, Ariz. R.Crim. P., asserting that he was entitled to an evidentiary hearing because the trial court could not assume he had been informed of and concurred with the stipulation. The trial court agreed and set the matter for a hearing.

¶ 7 At the hearing, the court admitted into evidence a partial transcript of the trial proceedings prior to jury selection and heard testimony from Smith and his trial attorney. The transcript reflects that the following transpired during a bench conference requested by the prosecutor after the trial court had announced it would seat eight jurors and an alternate:

THE COURT: I look at Counts I and II as being connected, which means concurrent sentences.

[PROSECUTOR]: They are separate assaults on separate individuals.

. . . .

. . . [Y]ou don't have enough to do a 12-person panel.

THE COURT: Sure I do.

. . . .

THE COURT: Are you going for a sentence greater than 30 years?

[PROSECUTOR]: No.

[SMITH'S COUNSEL]: The potential sentence is more than 30 years.

. . . .

[PROSECUTOR]: Unless we enter a stipulation that these two acts call for a concurrent sentence.

THE COURT: Do you want to do that?

[PROSECUTOR]: Yes. I would do that because it would generate an 8-person jury for us. I could do that.

THE COURT: . . . I would have difficulty finding concurrent time.

. . . .

[PROSECUTOR]: Let's go with the 12-person jury, Your Honor.

THE COURT: All right.

Almost immediately after this bench conference, Smith's counsel requested a bench conference at which the following occurred:

[SMITH'S COUNSEL]: . . . [The prosecutor] raised the question if this pool is large enough to select a 12-person jury from.

. . . .

THE COURT: We have enough.

. . . .

[PROSECUTOR]: ·I'm going to change my position. I'm going to stipulate to concurrent sentences.

THE COURT: You can't stipulate by yourself.

[SMITH'S COUNSEL]: We will stipulate.

THE COURT: All right.

¶ 8 Smith's trial counsel testified he had promptly conferred with his client after this second bench conference and had

> explained to [Smith] that what we had been talking about was the number of jurors available, and we believed there was a problem with the number of jurors. And because there wasn't [sic] enough jurors available, we had an agreement that we would go with a smaller jury and that would limit the time that he would be exposed to if we lost the trial.
>
> [He] asked me, I think, one question. He said: What happens if we don't do that? I said we would have to continue the trial, and then he said okay, and I said: I think it's a good idea. And that's why I, why I wanted to do that, and that was basically it.

Smith's counsel also testified that, before trial, he and Smith had discussed "the range of sentence that [his] charges carried," but not "the number of jurors that would be used in his trial."

¶ 9 Smith confirmed his attorney's testimony about their pretrial discussion, but believed, from watching "trials on TV," that he would have "twelve persons sitting on [his] jury." Smith testified he had not overheard what was said during the bench conferences, and after the second one, he had asked his attorney "what was going on." Smith testified his attorney had responded, "Shh. It's in [your] best interest.... That he [was] doing something on my behalf [and] would explain it to me later." When asked why he did not further question his attorney, Smith explained: "Well, basically, I didn't want to get him upset or anything during my trial with him working on it right then because I normally ask[ed] him a lot of questions...." Smith also stated that his attorney had not said "anything to [him] about an eight-person jury as opposed to a twelve-person jury" at that time or "the possible prison sentence [he] might receive if convicted." He said his attorney did not tell him about the stipulation until the jury began deliberations.

¶ 10 After considering the above evidence, the trial court again denied post-conviction relief. It found:

> [T]here was a stipulation to an eight-person jury and concurrent sentences in a side-bar conference, and there was a ratification by the defendant.
>
> I find that there was an understanding of the defendant that he would have an eight-person jury with one alternate, and the effect of that eight-person jury; in other words, that he could not be sentenced to a term beyond thirty years. And I think he also understood that, if he were convicted on both of these charges, that they would be running concurrently as was done.
>
>    ....
>
> ... I don't know that a defendant needs to ratify every objection or motion or action taken by defense counsel, and I find that is not necessary. [Smith's counsel] was working in the best interests of Mr. Smith, and there was some tactic involved in this that counsel employed and advised his client, and the client did agree that that be done—the option being to continue the trial, and I get the impression that the *defendant wanted to proceed at that time.*

¶ 11 We agree with the trial court that a criminal defendant ordinarily need not ratify or approve trial counsel's tactical or strategic decisions. *See State v. Levato*, 186 Ariz. 441, 924 P.2d 445 (1996) (counsel alone makes tactical decisions about conduct of trial); *State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984) (decisions on trial tactics rest with counsel). Indeed, but for exceptional circumstances, those decisions will bind the defendant even when they involve constitutional rights. *See Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Levato.* Sound reasons support this rule:

> "First, the attorney acts on behalf of his client.... The attorney, moreover, is the expert—not the client. Short of outright incompetence, the attorney's actions must be considered as being in the best interests of his client.
>
> "Second, ... a rule requiring an attorney to consult with his client before the client's rights may be waived would unduly interfere with trials. Not only would it hamper the attorney, it might force the

trial judge to interrupt the proceedings whenever a waiver might be occurring in order to protect the record on appeal.... [S]uch a procedure would distract and confuse a jury [and could] slow a trial to a snail's pace...."

*State v. Rodriguez*, 126 Ariz. 28, 34, 612 P.2d 484, 490 (1980), *quoting Lanier v. State*, 486 P.2d 981, 986–87 (Alaska 1971). Smith is thus bound by his attorney's stipulation to concurrent sentences and an eight-person jury unless exceptional circumstances exist. *Henry; Levato.*

¶ 12 Not surprisingly, few cases have found the existence of exceptional circumstances. In *Henry*, the Supreme Court did not find exceptional circumstances when defense counsel did not object to the admission of unconstitutionally seized evidence at the defendant's trial. The Court remanded the case for further proceedings, however, because the record was unclear whether counsel's failure to object had been a deliberate part of trial strategy.[1]

¶ 13 Similarly, no exceptional circumstances were found in *Winters v. Cook*, 489 F.2d 174 (5th Cir.1973). There, defense counsel refrained from raising a constitutional challenge to the racial composition of the grand jury that had indicted the defendant in return for a plea agreement that avoided the death penalty on the defendant's murder charge. The court observed that exceptional circumstances "may be grouped in two broad categories: first, where there is evidence of fraud, or gross negligence or incompetence on the part of the defendant's attorney; and, second, where an inherently personal right of fundamental importance is involved." *Id.* at 178. As to the first category, the court determined that there was no evidence in the record that defense counsel had done "anything other than to conscientiously represent the defendant to the best of his ability." *Id.*

¶ 14 The court then addressed the second category of exceptional circumstances. This category, said the court, involves such inherently fundamental rights that they "can be waived only by the defendant and not by his attorney" and includes "the right to plead guilty [and] to waive trial by jury." *Id.* at 179. Based on *Henry* and the Fifth Circuit's prior case law, the court concluded that "the right to be indicted or tried by a constitutionally composed jury is not one of the rights traditionally considered so inherently personal that only the defendant may waive it." *Id.* at 180.

¶ 15 As in *Winters*, the record in this case does not demonstrate exceptional circumstances that fall within the first category of fraud, gross negligence, or incompetence by trial counsel. See *State v. Collins*, 133 Ariz. 20, 648 P.2d 135 (App.1982). The record supports the trial court's finding that counsel "was working in the best interests of Mr. Smith." The question remains, however, whether this case falls within the second category of exceptional circumstances involving a right "so inherently personal that only the defendant may waive it." *Winters*, 489 F.2d at 180. We hold that it does.

¶ 16 Under A.R.S. §§ 13–604(I), 13–702.02, and 13–1204, Smith potentially faced a combined thirty-year prison sentence if convicted of both counts of aggravated assault with a deadly weapon or dangerous instrument. He thus had the right to a twelve-person jury pursuant to article II, § 23, of the Arizona Constitution and A.R.S. § 21–102(A). See *State v. Henley*, 141 Ariz. 465, 687 P.2d 1220 (1984) (defendant has right to twelve-person jury under state constitution when potential, rather than actual, sentence is thirty or more years, and right attaches when jury begins deliberations). Just as he could waive his right to a jury trial, see *State v. Butrick*, 113 Ariz. 563, 558 P.2d 908 (1976), Smith could also waive his right to a twelve-person jury. *State v. Prince*, 142 Ariz. 256, 689 P.2d 515 (1984). However, "[b]efore there can be a waiver, the record must show a knowing waiver by the defendant." *Id.* at 258, 689 P.2d at 517. Moreover, the waiver must follow "the same procedure required under Ariz. R.Crim. P. 18.1(b) [, 17 A.R.S.,] for a waiver of a jury trial." *Id.* Rule 18.1(b)(1) requires that the trial court "address the defendant personally,

1. *See State v. Corrales*, 138 Ariz. 583, 595, 676 P.2d 615, 627 (1983) (citing *Henry*, court held that counsel must make "deliberate choice to waive known and understood rights").

advise the defendant of his or her right to a [twelve-person] jury trial and ascertain that the waiver is knowing, voluntary, and intelligent." *See Butrick.* In addition, Rule 18.1(b)(2) requires that the waiver "be made in writing or in open court on the record." This means that the "record must affirmatively show a defendant knows he is giving up his or her right to a [twelve-person jury], and a signed document with a simple recital that his or her rights have been discussed with defense counsel is insufficient to meet the requirement of an affirmative showing." *Butrick,* 113 Ariz. at 566, 558 P.2d at 911.

¶ 17 It is thus apparent that a defendant's right to a twelve-person jury under the Arizona Constitution is a right so inherently personal that it cannot be waived by defense counsel; only the defendant can waive it. Hence, Smith's trial counsel could not waive Smith's right to a twelve-person jury by unilaterally stipulating with the state to concurrent sentences and, thus, to an eight-person jury. In addition, the evidence does not support the trial court's finding that Smith ratified trial counsel's stipulation. Trial counsel merely told Smith after the second bench conference that there was "an agreement that we would go with a smaller jury and that would limit the time that he would be exposed to if we lost the trial." And, he incorrectly told Smith that there were not "enough jurors available," when the trial court had assured counsel otherwise.

¶ 18 It is also apparent that the requirements for waiving the right to a twelve-person jury were not satisfied in this case. The trial court did not personally address Smith and tell him he had the right to a twelve-person jury; it did not ascertain whether Smith knowingly, intelligently, and voluntarily waived the right; and Smith did not waive the right in open court, nor does the record contain his written waiver.

¶ 19 Moreover, this is not a case in which Smith never had the right to a twelve-person jury. The facts established that Smith had committed aggravated assault with a dangerous instrument on two separate individuals and thus faced consecutive, fifteen-year pris-

on sentences. *See Henley,* 141 Ariz. at 467, 687 P.2d at 1222 (twelve-person jury mandated when defendant fires gun and hits two people because single act "responsible for two separate and distinct injuries"). Had the facts shown otherwise, however, Smith would have been properly tried by the eight-person jury. *See State v. Thorne,* 193 Ariz. 137, 971 P.2d 184 (App.1997) (only eight-person jury required when parties acknowledged at pretrial hearing that two of the three charges were based on same conduct and involved same victim; thus, defendant only exposed to concurrent sentences on those two charges). This is also not a case in which Smith lost his right to a twelve-person jury because one or more of the charges had been reduced or dismissed before the trial court submitted the case to the jury. *See State v. Prince,* 142 Ariz. 256, 258, 689 P.2d 515, 517 (1984) (no right to twelve-member jury when state modified allegations of prior convictions "before the beginning of trial so that only one prior conviction was alleged"); *State v. Cook,* 122 Ariz. 539, 596 P.2d 374 (1979) (twelve-person jury not required when state dismissed allegation of prior conviction at close of defendant's case); *State v. Thompson,* 139 Ariz. 133, 677 P.2d 296 (App.1983) (eight-member jury properly decided case after trial court reduced original theft charge to attempted theft before submitting case to jury).[2] In sum, the facts and law supported Smith's right to a twelve-person jury, and that right was not defeated by a reduction or dismissal of any of the charges before the case was submitted to the jury. Accordingly, we must determine whether the trial court's failure to comply with Rule 18.1(b) and to obtain Smith's personal waiver of his right to a twelve-person jury constituted harmless or fundamental error.

¶ 20 Harmless error is "ordinary trial error that, in the context of all the evidence, is amenable to quantitative assessment." *State v. Garcia–Contreras,* 191 Ariz. 144, 148, 953 P.2d 536, 540 (1998). Error is harmless when we can say, beyond a reasonable doubt, that the error did not affect the

---

**2.** *See also State v. Quintana,* 195 Ariz. 325, 987 P.2d 811 (App.1999) (jury trial not required when state reduced felony charge to misdemeanor prior to bench trial).

verdict. *See State v. Bible,* 175 Ariz. 549, 858 P.2d 1152 (1993); *State v. Gaines,* 188 Ariz. 511, 937 P.2d 701 (App.1997). In contrast, fundamental error undermines the foundation of the case, takes an essential right from a defendant, or deprives the defendant of a fair trial. *See State v. Valenzuela,* 298 Ariz. Adv. Rep. 26 (June 18, 1999); *Bible.* "To be fundamental, the error 'must be clear, egregious, and curable only via a new trial.'" *Bible,* 175 Ariz. at 572, 858 P.2d at 1175, *quoting State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991).

¶ 21 In this case, the error was fundamental and requires a new trial. In *Henley,* where, as here, an eight-member jury found the defendant guilty of two counts of aggravated assault involving two victims and he was sentenced to concurrent prison sentences, our supreme court held that, despite the defendant's failure to object to the eight-person jury, his convictions had to be reversed.

> [T]he error is fundamental because it violates a state constitutional provision. Because we cannot say beyond a reasonable doubt that the error did not significantly contribute to the defendant's conviction, the error is also harmful. We cannot predict, for example, whether four additional jurors would have found defendant Henley guilty beyond a reasonable doubt.

141 Ariz. at 469, 687 P.2d at 1224 (citation omitted). *See also State v. Luque,* 171 Ariz. 198, 200, 829 P.2d 1244, 1246 (App.1992) (trial by eight, rather than twelve, jurors not harmless error "because we cannot say beyond a reasonable doubt that the improper eight-person jury did not significantly contribute to the defendant's burglary conviction"). For the same reasons, we hold that Smith's trial before an eight-person jury, rather than a twelve-person jury, constituted fundamental, reversible error. We thus find that the trial court abused its discretion in denying post-conviction relief. *See State v. Soto–Perez,* 192 Ariz. 566, 968 P.2d 1051 (App.1998).

¶ 22 Accordingly, we grant review and grant relief by reversing Smith's convictions and sentences and remanding the case for a new trial. Because of our remand, we deny relief on Smith's challenge to the trial court's denial of post-conviction relief on the claim of ineffective assistance of counsel. This issue is moot.

CONCURRING: JOHN PELANDER, Presiding Judge, and M. JAN FLÓREZ, Judge.