52 P.3d 804

The STATE of Arizona, Appellee,

v.

Marc Anthony BENENATI, Appellant.

No. 2 CA–CR 1999–0064.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 3, 2002.

Review Denied Feb. 11, 2002.

Janet Napolitano, Arizona Attorney General, By Randall M. Howe and Kerri L. Chamberlin, Tucson, for Appellee.

Isabel G. Garcia, Pima County Legal Defender, By Alex Heveri, Tucson, for Appellant.

## OPINION

BRAMMER, Presiding Judge.

¶ 1 A jury found appellant Marc Benenati guilty of two counts of unlawful sale of a narcotic drug. After finding he had three prior convictions and had committed these offenses while on release for a separate felony offense, the trial court sentenced Benenati to concurrent, presumptive, 17.75–year prison terms, including a two-year mandatory enhancement pursuant to A.R.S. § 13–604(R). Benenati raises three issues on appeal: (1) the trial court erred in responding ex parte to a jury question; (2) the trial court violated his right to a jury trial under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in finding, instead of permitting the jury to do so, that he was on release at the time he committed these offenses; and (3) the trial court erred in finding that his out-of-state convictions constituted historical prior felony convictions. We find no merit to his first and third claims but vacate Benenati's two-year sentence enhancement under § 13–604(R) and remand the case for further proceedings because we agree that *Apprendi* requires that any fact, other than the fact of a prior conviction, exposing a defendant to a punishment greater than that otherwise permissible must be determined by a jury.

## Background

. ¶ 2 We view the facts in the light most favorable to sustaining the verdicts. *State v. Carlos,* 199 Ariz. 273, 17 P.3d 118 (App.2001). On September 16, 1996, an officer of the University of Arizona Police Department assigned to the Tucson Metropolitan Area Narcotics Trafficking Interdiction Squad responded to a message. The officer then met with Benenati and purchased one-sixteenth ounce of cocaine. After receiving another message the next day, the officer purchased a second one-sixteenth ounce of cocaine from Benenati.

## Discussion

### I. Trial court's communication with jurors

¶ 3 Benenati contends the trial court erred in responding to a juror's question during deliberations, arguing the communication occurred outside his presence and without his knowledge or consent. "The general rule in Arizona is that reversible error occurs when a trial judge communicates with jurors after they have retired to deliberate, unless defendant and counsel have been notified and given an opportunity to be present." *State v. Mata,* 125 Ariz. 233, 240–41, 609 P.2d 48, 55–56 (1980) (footnote omitted). However, if "it may be said, beyond a reasonable doubt, that there was no prejudice to the defendant, a communication between judge and jury outside the presence of defendant and counsel is harmless error." *Id.* at 241, 609 P.2d at 56;

*see also State v. Rich,* 184 Ariz. 179, 907 P.2d 1382 (1995).

¶ 4 After deliberations had begun, the trial court received four questions from the jury about the circumstances of the drug sales and the procedures the officers had used to identify Benenati. The court met with counsel and, with their consent, responded as follows: "All the evidence has been presented to you. In reaching your verdict, you must rely on your collective recollection of the evidence." After the jury rendered its verdicts, the court told counsel it had received a fifth question from the jury and, "[s]ince you were in trial," had "answered it the same way as the others." That question also referred to the officer's identification of Benenati.

¶ 5 In answering the jury's last question as it did, the court neither explicitly nor implicitly commented on the evidence. *See State v. Robin,* 112 Ariz. 467, 543 P.2d 779 (1975); *State v. Streyar,* 119 Ariz. 607, 583 P.2d 263 (App.1978). The communication essentially consisted of a refusal to answer the jury's question and a restatement of the court's instruction that the jury was charged with determining the facts. Although the trial court's action gave the parties "no opportunity to object or voice their concerns regarding the judge's procedure until it [was] too late," *Perkins v. Komarnyckyj,* 172 Ariz. 115, 118, 834 P.2d 1260, 1263 (1992), we are unable to conclude that Benenati suffered any prejudice from it. *See State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Davis,* 117 Ariz. 5, 570 P.2d 776 (App.1977) (trial court's ex parte communication to jurors not prejudicial because it merely restated jury instruction). Accordingly, any error the

court might have committed was harmless. *See Mata.*

## II. Release status finding

¶ 6 Benenati next claims he is entitled to relief under *Apprendi,* arguing his right to a jury trial under the Sixth Amendment of the United States Constitution and article II, § 23, of the Arizona Constitution was violated when the trial court, not the jury, determined his release status at the time he committed these offenses. We agree.

¶ 7 Benenati relies on *State v. Gross,* 201 Ariz. 41, 31 P.3d 815 (App.2001), in which Division One of this court held that, pursuant to *Apprendi,* a defendant's release status must be determined by a jury for purposes of enhancement under § 13–604(R).[1] In doing so, Division One concluded that *Apprendi* had effectively overruled a contrary rule announced by our supreme court in *State v. Hurley,* 154 Ariz. 124, 741 P.2d 257 (1987). *But see State v. Cox,* 201 Ariz. 464, 37 P.3d 437 (App.2002) (suggesting *Hurley* remains good law). Although we are not bound by *Gross,* we may find it persuasive " 'unless we are convinced that [it is] based upon clearly erroneous principles, or conditions have changed so as to render [it] inapplicable.' " *Danielson v. Evans,* 201 Ariz. 401, ¶ 28, 36 P.3d 749, ¶ 28 (App.2001), *quoting Castillo v. Industrial Comm'n,* 21 Ariz.App. 465, 471, 520 P.2d 1142, 1148 (1974) (alterations in *Danielson* ). Citing *Hurley,* the state urges us to reject *Gross* and hold that a defendant's release status is suitable for a trial court's determination because it is merely a sentence-enhancing factor.[2] If, however, *Apprendi* governs, release status must be found by the fact-finder. Whether Benenati's release status should have been determined by

1. Section 13–604(R), A.R.S., provides in part:
   A person who is convicted of committing any felony offense, which felony offense is committed while the person is released on bail or on the defendant's own recognizance on a separate felony offense ... shall be sentenced to a term of imprisonment two years longer than would otherwise be imposed for the felony offense committed while released on bond or on the defendant's own recognizance.
   Pursuant to a 1996 amendment to the statute, § 13–604(P) permits a trial court to determine a defendant's release status. 1996 Ariz. Sess.

   Laws, ch. 34, § 1. Prior to that time, the trier of fact was statutorily required to make such a finding. 1994 Ariz. Sess. Laws, ch. 236, § 1; *see also State v. Johnson,* 183 Ariz. 358, 903 P.2d 1116 (App.1995).

2. Our supreme court's denial of review in *Gross* affects neither our analysis nor our decision. *See Hagen v. United States Fidelity & Guar. Ins. Co.,* 138 Ariz. 491, 675 P.2d 1310 (1984); *State Farm Mut. Auto. Ins. Co. v. Wilson,* 162 Ariz. 247, 782 P.2d 723 (App.1989).

a jury is a question of law subject to our de novo review. *See Gross.*

¶ 8 In *Apprendi,* the Supreme Court addressed New Jersey's "hate crime" law, which increased the maximum sentencing range for certain offenses if the sentencing court found, by a preponderance of the evidence, that the offense had been racially motivated. The defendant there admitted he had fired several bullets into the home of an African American family in his neighborhood. He later pleaded guilty to offenses that carried penalties of three to ten years in prison. After an evidentiary hearing, the trial court concluded that the crime had been racially motivated and sentenced Apprendi to concurrent prison terms, the longest of which was twelve years.

¶ 9 In reversing the judgment, the Supreme Court found that Apprendi's sentence enhancement had been based only on his motivation in firing the bullets, a fact "perhaps as close as one might hope to come to a core criminal offense 'element.'" *Apprendi,* 530 U.S. at 493, 120 S.Ct. at 2364, 147 L.Ed.2d at 457. The Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455. The Court further stated: "'[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Id.* at 490, 120 S.Ct. at 2363, 147 L.Ed.2d at 455, *quoting Jones v. United States,* 526 U.S. 227, 252, 119 S.Ct. 1215, 1228, 143 L.Ed.2d 311, 332 (1999) (Stevens, J., concurring).

¶ 10 To the extent differing views have emerged about *Apprendi*'s reach, the Court has now settled the matter in *Ring v. Arizona,* 536 U.S. 584, ——, 122 S.Ct. 2428, 2439, 153 L.Ed.2d 556, —— (2002), in which it reiterated that, "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it— must be found by a jury beyond a reasonable doubt." In fact, the Court emphasized that "the Sixth Amendment does not permit a defendant to be 'expose[d] ... to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'" *Id.* at ——, 122 S.Ct. at 2432, *quoting Apprendi,* 530 U.S. at 483, 120 S.Ct. at 2359, 147 L.Ed.2d at 450.

¶ 11 The Court's decisions in *Apprendi* and *Ring* rested not on the ultimate imposition of a sentence greater than otherwise permissible, but, rather, on the effect a factual finding has on a defendant's exposure to such a sentence. For example, in finding unconstitutional Arizona's capital sentencing scheme, the Court in *Ring* noted that, under that scheme, "[i]n effect, 'the required finding [of an aggravating circumstance] expose[d Ring] to a greater punishment than that authorized by the jury's guilty verdict.'" —— U.S. at ——, 122 S.Ct. at 2440, *quoting Apprendi,* 530 U.S. at 494, 120 S.Ct. at 2365, 147 L.Ed.2d at 457. Moreover, the Court made no distinction between a sentencing judge's determination of aggravating factors related to the commission of the offense and those factors wholly unrelated to it. *Compare* A.R.S. § 13–703(G)(3), (4), and (5) *with* § 13–703(G)(1), (2), and (7). Accordingly, we must be mindful to not unduly restrict defendants' rights to a jury determination of any facts that expose them to sentences greater than otherwise prescribed.

¶ 12 We therefore disagree with the state that our discussion is controlled by the fact that, even though Benenati's sentences were enhanced by § 13–604(R), the sentences imposed were nonetheless within the statutory range for his crimes notwithstanding any such enhancement. As Division One of this court found in *Gross,* because "*Apprendi* focuses on a defendant's right to have a jury decide facts that affect the potential punishment[,] ... *any* determination exposing a defendant to a penalty exceeding the maximum [must] be submitted to a jury." 201 Ariz. 41, ¶ 14, 31 P.3d 815, ¶ 14; *see also Ring,* —— U.S. at ——, 122 S.Ct. at 2445 (Kennedy, J., concurring) (when "the finding of an aggravating circumstance exposes 'the defendant to a greater punishment than that authorized by the jury's guilty verdict,' ... it cannot be reserved for the judge"), *quoting*

*Apprendi,* 530 U.S. at 494, 120 S.Ct. at 2365, 147 L.Ed.2d at 457. Any right Benenati might have had to a jury trial on this issue was established when the state filed the allegation that he was on release.[3] It is impossible for a trial court to know at the time a defendant's release status is alleged whether the sentence ultimately imposed will or will not exceed the "prescribed statutory maximum." *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2363, 147 L.Ed.2d at 455.

¶ 13 We recognize our position on this point, although consistent not only with *Gross,* but also with *Ring* and *Apprendi,* is contrary to that taken by nearly every jurisdiction in cases decided without the benefit of the Court's decision in *Ring. See, e.g., United States v. Ellis,* 241 F.3d 1096 (9th Cir.2001) (*Apprendi* not implicated because defendant's sentence less than maximum statutory sentence otherwise permissible); *United States v. Sanchez,* 269 F.3d 1250 (11th Cir. 2001) (same).[4] But, we choose to follow *Apprendi*'s logic, and *Ring*'s clear message, that a fact exposing a defendant to increased sentencing, not the actual sentence imposed, is the litmus test. *See Ring.* For that reason, we find a logical disconnect in the reasoning of the many courts that have concluded that the need for or right to a jury determination of sentence enhancers is dependent on the sentence actually imposed. This reasoning, we believe, puts the cart before the horse—something we in Arizona do not permit.

¶ 14 In this regard, we agree with *Gross* when it emphasized that

"the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" [*Apprendi,* 530 U.S. at 494, 120 S.Ct. at 2365, 147 L.Ed.2d at 457.] If it does, then it is the "functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense." *Id.* at 494 n. 19, 120 S.Ct. [at 2365 n. 19, 147 L.Ed.2d at 457 n. 19].

201 Ariz. 41, ¶ 12, 31 P.3d 815, ¶ 12. Because the trial court failed to allow the jury to determine Benenati's release status, his jury trial right was violated if release status determination under § 13–604(R) falls within *Apprendi*'s reach. *See* Ariz. Const. art. II, § 23; A.R.S. § 21–102(A); *see also State v. Smith,* 197 Ariz. 333, 4 P.3d 388 (App.1999) (defendant entitled to twelve-person jury when exposed to sentence in excess of thirty years notwithstanding that actual sentences imposed totaled 7.5 years).

¶ 15 We accordingly turn our discussion to whether *Apprendi* requires a jury to determine a defendant's release status under § 13–604(R). Benenati's *Apprendi* claim is facially meritorious because release status is not "the fact of a prior conviction," *Apprendi,* 530 U.S. at 490, 120 S.Ct. at 2362, 147 L.Ed.2d at 455; his on-release status had the potential to increase his sentence beyond the statutory maximum for the narcotics offenses; and it was not found by the jury beyond a reasonable doubt.[5] Indeed, the

**3.** In oral argument before this court, Benenati argued his jury trial right in this context is analogous to a defendant's right to a twelve-person jury. A defendant's exposure to a sentence of at least thirty years' imprisonment establishes his or her right to a twelve-person jury, notwithstanding the actual sentence imposed. *State v. Luque,* 171 Ariz. 198, 201, 829 P.2d 1244, 1247 (App.1992) ("commencement of deliberations is the crucial point" in determining when defendant's right to twelve-person jury under article II, § 23 of Arizona Constitution attaches); *see also State v. Smith,* 197 Ariz. 333, 4 P.3d 388 (App.1999). To the extent *Luque* is analogous, we find it useful in determining the timing of inception of a defendant's jury trial right.

**4.** *See also United States v. Austin,* 255 F.3d 593 (8th Cir.2001); *United States v. King,* 254 F.3d

1098 (D.C.Cir.2001); *United States v. Osteen,* 254 F.3d 521 (4th Cir.2001); *United States v. Garcia,* 240 F.3d 180 (2d Cir.2001); *United States v. Heckard,* 238 F.3d 1222 (10th Cir.2001); *United States v. Williams,* 238 F.3d 871 (7th Cir.2001); *United States v. Baltas,* 236 F.3d 27 (1st Cir. 2001); *United States v. Williams,* 235 F.3d 858 (3d Cir.2000); *United States v. Corrado,* 227 F.3d 528 (6th Cir.2000); *United States v. Meshack,* 225 F.3d 556 (5th Cir.2000).

**5.** We do not consider that Benenati was ultimately convicted of the offense for which he was on release when he committed these drug offenses or that the conviction for that prior offense occurred prior to the jury's determination of his guilt here.

*Gross* court held that "[t]he plain language in *Apprendi* requires that the defendant's release status be submitted to the jury and proved beyond a reasonable doubt." 201 Ariz. 41, ¶ 9, 31 P.3d 815, ¶ 9.

¶ 16 The state argues, however, that a defendant's release status is exempt from *Apprendi* because it is essentially a fact of a prior conviction. The express exemption in *Apprendi* for the fact of a prior conviction arises from the Court's decision in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). There, the defendant pleaded guilty to entering the United States without special permission after having been deported. A person convicted of that offense is generally subject to a maximum, two-year prison term, but a person previously deported for committing an aggravated felony may be sentenced to a maximum, twenty-year prison term. Almendarez–Torres was subject to the twenty-year term.

¶ 17 The *Almendarez–Torres* Court noted that several factors were relevant in determining whether recidivism requires a jury determination: (1) whether the burden of proof is shifted "with respect to a fact which the State deems so important that it must be either proved or presumed," *Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281, 295 (1977); (2) whether the defendant is exposed to a significant increase in the possible sentencing range because the state proved the fact; (3) whether the statute increases the maximum penalty for the crime or "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it," *McMillan v. Pennsylvania*, 477 U.S. 79, 88, 106 S.Ct. 2411, 2417, 91 L.Ed.2d 67, 77 (1986); (4) whether the statute "creates a separate offense calling for a separate penalty," *id.;* and (5) whether the statute "simply t[akes] one factor that has always been considered by sentencing courts to bear on punishment ... and dictate[s] the precise weight to be given that factor." *Id.* at 89–90, 106 S.Ct. at 2418, 91 L.Ed.2d at 78–79.

¶ 18 In applying these factors to the statute used to enhance Almendarez–Torres's prison terms, the Court first noted that recidivism is "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Almendarez–Torres*, 523 U.S. at 243, 118 S.Ct. at 1230, 140 L.Ed.2d at 368. Second, the Court noted that, because of recidivism's unique sentencing-enhancement characteristics, its use by a legislature to increase the maximum possible sentence did not "make a determinative difference." *Id.* at 245, 118 S.Ct. at 1231, 140 L.Ed.2d at 369. Third, "the statute's broad permissive sentencing range d[id] not itself create significantly greater unfairness" because sentencing "[j]udges ... have typically exercised their discretion within broad statutory ranges." *Id.* at 245, 118 S.Ct. at 1231–32, 140 L.Ed.2d at 369. "Finally, the remaining *McMillan* factors support[ed] the conclusion that Congress ha[d] the constitutional power" to treat recidivism as a sentencing factor for an alien's illegal entry into the country after having been deported. *Id.* at 246, 118 S.Ct. at 1232, 140 L.Ed.2d at 369. Thus, the Court found recidivism was not a fact requiring a jury's determination.

¶ 19 There is little doubt a defendant's release status is akin to the existence of a prior conviction, having the indistinguishable effect of increasing a defendant's maximum sentence beyond the range otherwise permissible. *See Cox* (Barker, J., specially concurring) (parole and release status akin to *Apprendi*'s exception for fact of prior conviction). And, neither fact relates at all to the commission of the underlying offense with which the defendant is charged. *See Almendarez–Torres*, 523 U.S. at 244, 118 S.Ct. at 1231, 140 L.Ed.2d at 368 ("[R]ecidivism 'does not relate to the commission of the offense, *but goes to the punishment only* ....'"), *quoting Graham v. West Virginia*, 224 U.S. 616, 629, 32 S.Ct. 583, 588, 56 L.Ed. 917, 923 (1912) (emphasis added in *Almendarez–Torres* ). Further, disclosure of either release status or prior convictions has similar potential to prejudice a jury against a defendant. *See Almendarez–Torres* (significant risk of prejudice from introducing prior conviction). To minimize that effect, we have approved the use of bifurcated proceedings in the *Apprendi* context. *State v. Nich-*

*ols,* 201 Ariz. 234, 33 P.3d 1172 (App.2001) (approving bifurcated trial on guilt and serious drug offense allegation); *see also State v. Gilbert,* 119 Ariz. 384, 581 P.2d 229 (1978) (discussing bifurcated trial procedure for determining prior convictions under prior statute). And, we recognize that the § 13–604(R) sentence enhancement is based merely on a status that can be proven by objective, documentary evidence typically containing few, if any, disputed facts.

¶ 20 However, in light of the *Apprendi* Court's focus on factors it had identified in *Almendarez–Torres, McMillan,* and *Patterson* requiring jury determination of sentence enhancers, which we have already discussed, we are not persuaded that, merely because § 13–604(R) defines an easily proven status, determination of that status may be made by a trial judge rather than by a jury. Although cogent reasons support allowing a trial judge alone to make a release status determination, *see Cox* (Barker, J., specially concurring), *Apprendi* and *Ring* do not permit that result.

¶ 21 Contrary to the state's argument, the *Apprendi* Court described *Almendarez–Torres* as "a narrow exception," 530 U.S. at 490, 120 S.Ct. at 2362, 147 L.Ed.2d at 455, one that "turned heavily upon the fact that … procedural safeguards attach[ ] to any 'fact' of prior conviction." 530 U.S. at 488, 120 S.Ct. at 2361–62, 147 L.Ed.2d at 454. Although many procedural safeguards attend determination of a defendant's release pending trial, *see generally* Ariz. Const. art. II, § 24; A.R.S. § 13–114; Ariz. R.Crim. P. 1.2, 7.4(a), 16A A.R.S., none of these pretrial matters bears on the " 'fact' of [the defendant's] prior conviction." *Apprendi,* 530 U.S. at 488, 120 S.Ct. at 2362, 147 L.Ed.2d at 454. Instead, these procedural rights only generally ensure that a defendant is afforded a "just, speedy determination of [his or her] criminal proceeding." Ariz. R.Crim. P. 1.2. Because the "fact" of a defendant's prior conviction cannot be known until a fact-finder determines guilt, these pretrial procedures are irrelevant when examining sentence enhancement under § 13–604(R). *See United States v. Tighe,* 266 F.3d 1187 (9th Cir.2001) (trial court violated defendant's right to jury trial under *Apprendi* by enhancing his sentence because of prior juvenile delinquency adjudication that had been neither accompanied by right to jury trial nor subject to proof-beyond-a-reasonable-doubt standard); *but see United States v. Smalley,* 294 F.3d 1030 (8th Cir.2002) (juvenile adjudication sufficiently reliable for *Apprendi* purposes if accompanied by required procedural safeguards); *State v. Hitt,* 42 P.3d 732, 740 (Kan. 2002) ("Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the *Apprendi* exception for prior convictions encompasses juvenile adjudications.").[6]

¶ 22 Although the state's position rests on its characterization of release status as a traditional sentencing factor, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi,* 530 U.S. at 494, 120 S.Ct. at 2365, 147 L.Ed.2d at 457; *see also Ring,* —— U.S. at ——, 122 S.Ct. at 2441 ("[T]he characterization of a fact or circumstance as an 'element' or a 'sentencing factor' is not determinative of the question 'who decides,' judge or jury."). A trial court's finding of release status falls within that category. We therefore strictly limit to the fact of a prior conviction the *Apprendi* exception permitting a court, and not a jury, to find sentence enhancers that expose a defendant to a sentence greater than otherwise permissible. The requirement that the sentencing judge determine a defendant's release status for sentence enhancement purposes under A.R.S. § 13–604(P) unconstitutionally conflicts with the defendant's right to a jury trial on that issue as established in *Apprendi. See Gross.* Because the trial court erred by failing to sub-

---

**6.** Notwithstanding the *Apprendi* Court's focus on the various procedural protections afforded a defendant at the time a trier of fact makes a determination of guilt, at a subsequent criminal proceeding, when the state has alleged the previous determination of guilt as a prior conviction, we note that neither a judge nor a jury will be asked to evaluate the procedural safeguards attending the earlier proceeding.

mit Benenati's release status to the jury, we vacate Benenati's § 13–604(R) enhancement.

### III. Out-of-state convictions as historical prior convictions

■ ¶ 23 Benenati also argues the trial court erred in finding that his two Florida convictions constituted historical prior felony convictions for sentencing purposes when the state presented no evidence that the offenses of which he was convicted would constitute felonies under Arizona law. We review de novo this issue of law. *State v. Heath*, 198 Ariz. 83, 7 P.3d 92 (2000).

■ ¶ 24 Before a judge may enhance a defendant's sentence with a conviction from another jurisdiction, the judge must determine whether the crime "would be punishable as a felony or misdemeanor" in Arizona. A.R.S. § 13–604(N). In making that determination, "[t]he sentencing court 'must be sure that the fact finder in the prior case actually found beyond a reasonable doubt that the defendant had committed every element that would be required to prove the Arizona offense.'" *State v. Morrison*, 181 Ariz. 279, 281, 889 P.2d 637, 639 (App.1995), *quoting State v. Clough*, 171 Ariz. 217, 219–20, 829 P.2d 1263, 1265–66 (App.1992).

■ ¶ 25 At the sentencing hearing, the state introduced certified copies of two judgments from Florida courts showing Benenati had been convicted of violating Fla. Stat. Ann. § 812.13(1) and (2)(c) by committing robbery without the use of a firearm or other weapon and Fla. Stat. Ann. § 843.01 by resisting an officer with violence. Preliminarily, we note that Benenati, who was sentenced pursuant to A.R.S. § 13–604(D), does not contest the court's reliance on his historical Arizona felony conviction, the charge for which he was on release at the time he committed the unlawful sale offenses. *See State v. Thompson*, 200 Ariz. 439, 27 P.3d 796 (2001) (§ 13–604 enhancement applies when commission of prior offense precedes commission of present offense and when conviction on prior offense precedes conviction on present offense). Consequently, and because § 13–604(D) only required the trial court to find that Benenati had been convicted of two prior felony offenses, we need only decide whether one of Benenati's Florida convictions conforms to an Arizona felony conviction.

¶ 26 At the time Benenati committed the Florida robbery offense, Fla. § 812.13(1) provided: " 'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear." In Arizona, "[a] person commits robbery if in the course of taking any property of another ... against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance." A.R.S. § 13–1902(A). A Florida robbery conviction is punishable as a felony if committed without the use of a weapon. Fla. § 812.13(2)(c). Florida's robbery statute requires proof of specific intent, *Daniels v. Florida*, 587 So.2d 460 (Fla.1991), as does Arizona's robbery statute. *State v. Celaya*, 135 Ariz. 248, 660 P.2d 849 (1983). And, to establish the crime of robbery in Florida, the state must prove a defendant used physical force not only to take a victim's property, but also to overcome the victim's resistance. *Robinson v. Florida*, 692 So.2d 883 (Fla. 1997). *Compare State v. Stevens*, 184 Ariz. 411, 413, 909 P.2d 478, 480 (App.1995) (relevant behavior under § 13–1902 must be directed at either "coercing the victim into surrendering ... property belonging to [the victim], or preventing [the victim] from resisting [the defendant] in [the defendant's] efforts to take or retain it"). Because Florida's robbery statute strictly conforms to Arizona's robbery statute, we conclude the trial court did not err in finding that Benenati's Florida robbery conviction constituted a prior felony conviction for sentencing purposes. Accordingly, the court did not err in imposing an enhanced sentence pursuant to § 13–604(D) based on Benenati's having had two or more historical prior felony convictions.

### Conclusion

¶ 27 Having determined the trial court erred in failing to submit to the jury the question of whether Benenati was on release at the time he committed these offenses, we vacate Benenati's § 13–604(R) sentence en-

 

hancement. However, because the trial court found neither aggravating nor mitigating factors, we need not vacate the presumptive sentences the court imposed on his unlawful sale convictions. *See State v. Thurlow*, 148 Ariz. 16, 712 P.2d 929 (1986); *see also State v. Johnson*, 183 Ariz. 358, 903 P.2d 1116 (App.1995). Instead, we remand the case for further proceedings. *See Monge v. California*, 524 U.S. 721, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (allowing retrial on prior conviction allegation).

CONCURRING: M. JAN FLÓREZ, Judge, and JOHN PELANDER, Judge.