207 P.3d 760

**STATE of Arizona, Appellee,**

v.

**Eric Leigh STOCK, Appellant.**

**No. 1 CA–CR 07–0541.**

Court of Appeals of Arizona, Division 1, Department A.

March 10, 2009.

Terry Goddard, Attorney General by Kent Cattani, Chief Counsel, Criminal Appeals Section, and William Scott Simon, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Dana P. Hlavac, Mohave County Public Defender by Jill L. Evans, Deputy Public Defender, Kingman, Attorneys for Appellant.

**OPINION**

WEISBERG, Judge.

¶ 1 Eric Leigh Stock ("Defendant") appeals from the consecutive enhanced sentences imposed following his convictions of one count of unlawful flight from a law enforcement vehicle, a class 5 felony, and one count of resisting arrest, a class 6 felony. Defendant also was convicted of two misdemeanor counts, one for endangerment, a class 1 misdemeanor, and one for criminal

damage, a class 2 misdemeanor. For the reasons that follow, we affirm the convictions and sentences imposed.

## BACKGROUND

¶ 2 A Bullhead City police officer saw Defendant without headlights driving in a residential area at 1:50 a.m. in August 2006. As Defendant's vehicle approached the officer's vehicle, the officer turned on his overhead lights. Defendant still did not turn on his headlights but began to accelerate as he drove away from the officer. The officer then radioed dispatch that he suspected that Defendant was driving a stolen vehicle. The officer made a u-turn, activated all lights and his siren, and began following Defendant. Soon afterward, two other officers joined the pursuit.

¶ 3 Defendant's vehicle eventually came to rest in the Colorado River. One officer testified at trial that Defendant exited his vehicle and appeared to be trying to swim to the opposite shore. Then, as two officers approached him in chest-deep water, Defendant threw "closed-fist punches," kicked, flailed, pulled, turned, yelled, "and [did] anything he could to get away." The officers ultimately handcuffed and arrested Defendant. They also took his passenger, D.M., into custody.

¶ 4 Defendant was charged with unlawful flight from law enforcement, resisting arrest, endangerment based on the presence of D.M. as a passenger in the vehicle, and criminal damage to a police vehicle. He also was charged with four counts of aggravated assault for allegedly attempting to run into several officers during the high-speed pursuit and for inflicting injuries on one officer while he was resisting arrest. The jury found Defendant guilty of unlawful flight, resisting arrest, endangerment, and criminal damage but found him not guilty of aggravated assault.

¶ 5 At the conclusion of trial, Defendant admitted that he had been on felony release at the time he committed the above offenses. The court accepted the State's recitation of a

factual basis for the allegation of Defendant's release status and found that Defendant had made a knowing, voluntary, and intelligent admission. Prior to sentencing, the court heard additional evidence and concluded that Defendant had two historical prior felony convictions. The court also concluded that because unlawful flight and resisting arrest were two separate offenses, it would impose the additional two years required by Arizona Revised Statutes ("A.R.S.") section 13–604(R) (2003)[1] based on Defendant's felony release status as to both sentences. Therefore, the court imposed a seven-year presumptive term for unlawful flight with credit for 283 days of presentence incarceration and a consecutive five-year mitigated term for resisting arrest. The court imposed concurrent thirty- and fifteen-day jail sentences for the two misdemeanor offenses and gave Defendant credit for time already served. Finally, the court imposed a term of community supervision of one year and eight months "based upon the total prison sentences imposed."

¶ 6 Defendant timely appealed. We have jurisdiction pursuant to Ariz. Constitution Article VI, Section 9, and A.R.S. §§ 12–120.21(A)(1)(2003), 13–4031 and 4033(A)(2003).

## DISCUSSION

### Defendant's Conduct Did Not Constitute a Single Act

¶ 7 Defendant first argues the superior court erred in imposing consecutive sentences because he committed the offenses of unlawful flight and resisting arrest on the same occasion.

¶ 8 In his presentencing memoranda to the trial court, defense counsel cited *State v. Gordon*, 161 Ariz. 308, 315, 778 P.2d 1204, 1211 (1989), to argue that the court should treat the two felonies as spree offenses committed on one occasion. In support, counsel asserted that if Defendant incurred any fu-

---

1. This subsection required the trial court to enhance by two years a defendant's sentence for a felony committed "while the person [was] released on bail or on the defendant's own recognizance on a separate felony offense." As of January 1, 2009, § 13–604 was amended and combined with § 13–702.02.

ture convictions, the two instant felonies would be treated as one for sentencing enhancement purposes pursuant to A.R.S. § 13–604(M) (2003), citing *State v. Henry,* 152 Ariz. 608, 734 P.2d 93 (1987), and *State v. Kelly,* 190 Ariz. 532, 534, ¶ 6, 950 P.2d 1153, 1155 (1997) (two prior offenses were treated as one transaction committed on same occasion for purposes of sentence enhancement under § 13–604(M)). The State disagreed and argued that consecutive sentences were proper because Defendant's unlawful flight ceased when he exited his vehicle in the river, and his conduct in resisting arrest began at that point. The prosecutor also noted that the crimes had different victims.

¶ 9 In imposing consecutive sentences, the court reasoned that had Defendant "yielded to the authority of the police" in the river, he would have committed only unlawful flight. Therefore, when he then resisted attempts to arrest him, that was "separate activity [and] distinct from the flight." Thus, the court concluded that for having committed two separate offenses, Defendant should receive two separate punishments.

¶ 10 Defendant argues on appeal that his consecutive sentences violate A.R.S. § 13–116 (2001) and he thus received an illegal sentence.[2] Section 13–116 provides: "An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." This court "review[s] de novo a trial court's decision to impose consecutive sentences in accordance with A.R.S. § 13–116." *State v. Urquidez,* 213 Ariz. 50, 52, ¶ 6, 138 P.3d 1177, 1179 (App.2006).

¶ 11 If a defendant's conduct constitutes a 'single act,' the court may not impose consecutive sentences. *State v. Hampton,* 213 Ariz. 167, 182, ¶ 64, 140 P.3d 950, 965 (2006) (quoting *Gordon,* 161 Ariz. at 315, 778 P.2d at 1211). In determining whether a defendant has committed a single act, our supreme court explained that it

consider[s] the facts of each crime separately, *subtracting from the factual transaction the evidence necessary to convict on the ultimate charge*-the one that is at the essence of the factual nexus and that will often be the most serious of the charges. *If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible* under A.R.S. § 13–116. In applying this analytical framework, however, *we will then consider whether, given the entire "transaction," it was factually impossible to commit the ultimate crime without also committing the secondary crime.* If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13–116. We will then consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences.

*Gordon,* 161 Ariz. at 315, 778 P.2d at 1211 (emphasis added).

¶ 12 Defendant does not dispute that the *Gordon* analysis applies but argues that his "on release" status "is the functional equivalent of" an element of" unlawful flight. Therefore, once the evidence necessary to convict him of *unlawful flight while on release* is removed, there is insufficient evidence to support a conviction for *resisting arrest while on felony release.* As authority, he cites *State v. Benenati,* 203 Ariz. 235, 52 P.3d 804 (App.2002), and *State v. Gross,* 201 Ariz. 41, 31 P.3d 815 (App.2001). We, however, disagree.

¶ 13 *Gross* held that because a defendant's release status "exposes [him] to a sentence in excess of the statutory limits for the crime encompassed by the jury's verdict, it is the jury that must decide whether the defendant was on release status" before the judge may use that fact to enhance his sentence. 201

---

2. The State argues that Defendant failed to object to imposition of consecutive sentences and we therefore may review only for fundamental error. *See State v. Henderson,* 210, 561, 567, ¶ 19, 210 Ariz. 561, 115 P.3d 601, 607 (2005) (fundamental

error may be raised for the first time on appeal). The record indicates, however, that Defendant objected and preserved this issue for purposes of appeal.

Ariz. at 45, ¶ 16, 31 P.3d at 819. *Benenati* reached the same conclusion. 203 Ariz. at 241, ¶ 22, 52 P.3d at 810. In doing so, *Benenati* referred to language in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that a factual finding that would expose a defendant to a greater punishment than that authorized by the jury's verdict had to be found by the jury and noting that the additional fact is *"the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict."* *Id.* at 239, ¶ 14, 52 P.3d at 808.

¶ 14 Nevertheless, it is undisputed that one can commit the offenses of unlawful flight or resisting arrest even if one is not on felony release, which is why the latter fact is one that the jury must separately and expressly find *for sentencing purposes.* As noted, in this case Defendant admitted that he was on felony release status when he committed unlawful flight and resisting arrest. Furthermore, he cites no case holding that his release status is a substantive element of either of these offenses. And as we stated in *Gross,* release status is "independent of the facts constituting the underlying offense." *Id.* at ¶ 17, 31 P.3d 815. Thus, we conclude that (1) even if certain facts, such as release status, must be found by a jury in order to authorize imposition of an enhanced sentence, those additional facts are not necessarily substantive elements of the crime charged, and (2) that being on felony release is not a substantive element of either crime at issue here. Accordingly, Defendant has not shown that under the first step of the *Gordon* analysis, he should receive concurrent sentences.

¶ 15 Having established that "on felony release" is not an element of either crime, when we apply *Gordon* to Defendant's convictions, we first consider the evidence necessary to convict him of unlawful flight, the more serious offense. That offense requires proof that, while driving a vehicle, Defendant willfully fled from a pursuing, appropriately marked law enforcement vehicle. Officer M.'s testimony established that he was in a fully marked police vehicle, flipped on his overhead lights, and activated his si-

ren after he saw Defendant drive by without headlights and then rapidly accelerate away. Two other officers testified that they had joined the pursuit with fully activated emergency lights and sirens. Furthermore, the pursuit had continued for some distance as Defendant initially turned onto Highway 95, then into a parking lot, lost a tire, stopped briefly, re-entered the highway, and finally turned down a street that ended at the river's edge. Although Defendant did not testify, the jury was given a definition of "willfully" and instructed that it should give circumstantial evidence whatever weight such evidence deserved.

¶ 16 If we subtract this evidence, we must consider whether the remaining evidence admitted at trial would support a conviction of the lesser offense of resisting arrest. Officer E. testified that he waded into the river after Defendant, "giving commands to stop and you're under arrest," but that Defendant continued to move away. When the officer got within arm's reach, Defendant "began flailing, throwing punches, kicking at me" and continued to pull, turn, kick, and "do[ ] anything he could to get away." This evidence was sufficient to convict Defendant of resisting arrest, and thus under the first step of the *Gordon* analysis, Defendant was eligible for consecutive sentences.

¶ 17 Under the next step of the *Gordon* test, we consider whether it would have been impossible for Defendant to have committed unlawful flight without also committing resisting arrest. As the trial judge observed, it was not impossible. Once his vehicle landed in the river and stopped moving, if Defendant had ceased efforts to escape and to avoid being taken into custody, he would have been charged only with unlawful flight. Therefore, under this *Gordon* analysis, Defendant did not commit a single act for purposes of A.R.S. § 13–116.

¶ 18 Finally, under the third step of *Gordon,* we ask whether the crime of resisting arrest exposed the victim to an additional risk of harm beyond that inherent in unlawful flight. Defendant's continuing resistance and physical attacks on the arresting officers required their full attention to Defendant and distracted them from more promptly rescu-

ing D.M., who had been unable to open her door to escape, from the river-bound vehicle. Accordingly, under *Gordon*, the trial court correctly found that Defendant had committed multiple acts and permissibly imposed consecutive sentences. 161 Ariz. at 315, 778 P.2d at 1211.

**Application of A.R.S. §§ 13–604(C) and (R)**

¶ 19 Defendant's second contention is that even if his sentences did not violate A.R.S. § 13–116, the court erred by enhancing his sentences under A.R.S. § 13–604(C) in violation of A.R.S. § 13–604(M) and misapplied A.R.S. § 13–604(R). Subsection (C) requires the imposition of enhanced sentences upon a repetitive offender who has committed two prior historical felonies. Subsection (M) directs that at the time of sentencing, "[c]onvictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section." Subsection (R) provides that a person convicted of any felony offense, "which ... is committed while the person is released on bail or on [his] own recognizance on a separate felony offense ... shall be sentenced to a term of imprisonment two years longer than would otherwise be imposed for the felony offense committed while released on bond or on the defendant's own recognizance." Furthermore, subsection (R) states that "[t]he additional sentence imposed under this subsection is in addition to any enhanced punishment that may be applicable under any of the other subsections of this section." We hold that the trial court correctly applied the mandates of A.R.S. ¶ 13–604.

¶ 20 Also in sentencing Defendant, the court did not count either the instant unlawful flight or resisting arrest conviction as an historical prior. Instead, it relied on two prior historical felonies committed by Defendant on different occasions in 1995 and 1996. Thus the court did not even arguably violate § 13–604(M).

¶ 21 Next, pursuant to § 13–604(R), the court added two years to each of Defendant's already enhanced sentences; it did so because of his felony release status at the time he committed the instant offenses and not because of his historical prior felony convictions. At the sentencing hearing, defense counsel did not dispute that § 13–604(R) required the court to enhance Defendant's sentence by an additional two years because of his felony release status. However, counsel stated that he had been unable to find case law clarifying whether the court had to add two years to each term or simply to the total number of years when adding his sentences together. The State similarly had not found any authority regarding application of A.R.S. § 13–604(R). The trial court, after expressing some doubt about how to interpret A.R.S. § 13–604(R), held that the statutory language meant "if you commit a crime while you are released on a felony [,] the sentencing range for that crime simply goes up two years."

¶ 22 The trial court correctly applied the plain terms of § 13–604(R), which requires that each felony sentence be enhanced by two years. *See State v. Pereyra*, 199 Ariz. 352, 354, ¶ 6, 18 P.3d 146, 148 (App.2001) (when interpreting a statute, courts look first to its plain language). The statute specifies that when "any felony offense" is committed while on felony release, the resulting sentence must be extended by two years. In this case, Defendant committed two such felonies, which required that both resulting sentences be extended by two years.

**CONCLUSION**

¶ 23 There was no error in the trial court's interpretation and application of the sentencing statutes and in particular, the court's imposition of two enhanced sentences based upon the existence of two historical prior felonies and of the additional two-year term added to each of those sentences. Accordingly, we affirm the convictions and sentences imposed.

CONCURRING: JOHN C. GEMMILL and DANIEL A. BARKER, Judges.