IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**STATE OF ARIZONA,**
*Respondent,*

*v.*

**MICHAEL EUGENE TRAVERSO,**
*Petitioner.*

---

No. CR-23-0264-PR
Filed September 23, 2025

---

Appeal from the Superior Court in Maricopa County
The Honorable Katherine Cooper, Judge
No. CR2006-160536-001
**AFFIRMED**

---

Opinion of the Court of Appeals, Division One
256 Ariz. 278 (App. 2023)
**VACATED IN PART AND REMANDED**

---

COUNSEL:

Rachel H. Mitchell, Maricopa County Attorney, Philip D. Garrow (argued), Deputy County Attorney, Appeals Bureau Chief, Phoenix, Attorneys for State of Arizona

Lori L. Voepel, Beus O'Connor McGroder, PLLC, Phoenix; and Randal McDonald (argued), Law Office of Randal B. McDonald, Phoenix, Attorneys for Michael Eugene Traverso

Jon M. Sands, Federal Public Defender, Keith J. Hilzendeger, Assistant Federal Public Defender, Phoenix, Attorneys for Amici Curiae Arizona Attorneys for Criminal Justice and the Federal Public Defender for the District of Arizona

JUSTICE MONTGOMERY authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BOLICK, BEENE, KING, and PELANDER (Retired) joined.[*]

---

JUSTICE MONTGOMERY, Opinion of the Court:

**¶1** Criminal defendants convicted and sentenced after a trial may file a notice requesting post-conviction relief ("PCR") under Arizona Rule of Criminal Procedure 32.1. A defendant who requests relief based on an ineffective assistance of counsel ("IAC") claim must specifically proceed under Rule 32.1(a), which permits relief if "the defendant's conviction was obtained, or the sentence was imposed, in violation of the United States or Arizona constitutions." *See* Ariz. R. Crim. P. 32.1(a) cmt. to 2020 amendment ("This provision encompasses most traditional post-conviction claims, such as the denial of counsel, incompetent or ineffective counsel, or violations of other rights based on the United States or Arizona constitutions.");[1] *State v. Goldin*, 239 Ariz. 12, 16 ¶ 14 (App. 2015) ("IAC claims fall under Rule 32.1(a).").

**¶2** Nonetheless, "[a] defendant is precluded from relief under Rule 32.1(a) based on any ground . . . waived . . . in any previous post-conviction proceeding, except when the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3). Additionally, a defendant who fails to file a notice for relief under Rule 32.1(a) within the time required must provide an adequate explanation for why the failure was not the defendant's fault. Ariz. R. Crim. P. 32.4(b)(3)(D).

**¶3** In this case, we must determine whether a defendant who alleged an IAC claim in a previous PCR proceeding is precluded, automatically or otherwise, from raising a different IAC claim in a successive PCR petition. To make this determination, we must further

---

[*] With the retirement of Justice Robert M. Brutinel, pursuant to article 6, section 3 of the Arizona Constitution, Justice John Pelander (Retired) of the Arizona Supreme Court was designated to sit in this matter.

[1] Relatedly, we note that "[a]lthough a comment may clarify a rule's ambiguous language, a comment cannot otherwise alter the clear text of a rule." *State v. Aguilar*, 209 Ariz. 40, 48 ¶ 26 (2004).

decide whether an IAC claim based on trial counsel's near total failure to communicate a plea offer implicates "a constitutional right that can only be waived [in a notice of PCR] knowingly, voluntarily, and personally by the defendant." Ariz. R. Crim. P. 32.2(a)(3). Finally, we consider whether the facts of this case excuse an untimely notice of PCR.

¶4 For the reasons set forth below, we hold that a successive IAC claim based on a defense counsel's woefully inadequate communication of a plea offer under the circumstances present here implicates a constitutional right of great magnitude—the right to plead guilty and waive a jury trial. Thus, a defendant must knowingly, voluntarily, and personally waive such an IAC claim in a prior notice of PCR for preclusion under Rule 32.2(a)(3). We further hold that the defendant here adequately explained why the untimely PCR notice was not his fault as required by Rule 32.4(b)(3)(D).

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5 In 2006, Michael Traverso was indicted on six counts of sexual conduct with a minor and one count of "public sexual indecency to a minor." On three separate occasions before trial, the State communicated a plea offer to Traverso's trial counsel that provided for a maximum sentence of 27 years. But Traverso's counsel did not tell him about the offer until immediately before a pre-trial release hearing, the day before the offer was set to expire. Before the hearing, Traverso's counsel told him that the plea offer was for 13 to 27 years. He did not advise Traverso that, if convicted, his sentences would be consecutive, meaning Traverso faced up to 163.5 years in prison.[2] Instead, Traverso's trial counsel merely told him that the offer was "outrageous."

¶6 During the pre-trial release hearing, the judge asked about plea negotiations. The prosecutor explained that the State had made an offer but believed Traverso had rejected it because the prosecutor had not heard back from Traverso's counsel. At the prosecutor's request, the judge provided a *Donald* advisement to inform Traverso of his potential

---

[2] The parties refer to various numbers for Traverso's maximum possible sentence. Based on the information provided by the prosecutor, Traverso's maximum sentence was 163.5 years.

sentencing range and the terms of the plea offer.[3] The prosecutor explained that the six counts of sexual conduct with a minor each carried a sentencing range of 13 to 27 years and that Traverso's sentences for each count would run consecutively, meaning his sentence, if convicted of all six counts, would be "basically 13 times six, up to 27 times six." The prosecutor further explained that the single count of public sexual indecency to a minor carried a presumptive sentence of 1.5 years, which would also be served consecutively. The prosecutor then stated that the plea offer involved stipulating to a sentence between 13 and 27 years, serving lifetime probation following release, and paying any restitution owed to the victim.

¶7 After the prosecutor explained the potential sentencing consequences after a trial and reviewed the plea offer terms, the judge asked Traverso whether he: (1) heard what the plea agreement provided; (2) understood the penalties he would face if convicted at trial; and (3) understood the penalties he would face under the plea agreement. Traverso answered each question in the affirmative. The judge then said his understanding was that Traverso "d[id] not want to accept the plea," to which Traverso responded "[a]bsolutely not." Traverso then said: "I'm innocent." The court found Traverso had "knowingly, intelligently and voluntarily rejected the State's plea offer."

¶8 On the first day of trial, approximately three months later, Traverso asked defense counsel how much prison time he would receive if convicted. Traverso related being "completely shocked" to learn the total possible sentence, because his counsel had never discussed the applicable sentences with him and had not explained anything about mandatory or consecutive sentencing. Traverso had "learn[ed] about mandatory sentencing . . . a few days before trial from another jail inmate."

---

[3] In *State v. Donald*, 198 Ariz. 406, 413 ¶ 14 (App. 2000), the court of appeals acknowledged that "once the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer." Following *Donald*, prosecutors commonly recite the terms of a plea offer on the record before its expiration. Trial courts also ask if a defendant understands the consequences of pleading guilty and the potential sentence if convicted at trial.

4

¶9            Upon hearing about the potential sentences he faced if convicted, Traverso "started thumbing through [his defense counsel's] three-ring binder," in which he found a copy of the plea offer he had rejected at the earlier release hearing.  Traverso asked his counsel if he could still accept the plea offer and "immediately signed it."  Defense counsel and the prosecutor then approached the bench to speak with the judge and the three went back into the judge's chambers.  Traverso "assumed" this was "for the purpose of discussing [his] desire to accept the plea offer."  An in-chambers discussion took place off the record.[4]  When defense counsel returned, he informed Traverso that "there was no longer a plea on the table."

¶10           Following trial, the jury found Traverso guilty on all counts. The trial court sentenced him to 79.5 years—the minimum 13-year term on all six counts of sexual conduct with a minor and the presumptive 1.5-year term on the indecency count, with all seven sentences to run consecutively. The court of appeals affirmed the convictions and sentences on direct appeal.  *State v. Traverso*, No. 1 CA-CR 07-0533, 2008 WL 4990566, at *1 ¶ 1 (Ariz. App. Nov. 20, 2008) (mem. decision).

¶11           Traverso then timely filed his first PCR notice based on IAC, among other claims, in 2009.  However, despite Traverso discussing the plea offer issues with PCR counsel, she did not consider them as meritorious as the bases for his other claims and did not present them as a separate IAC claim for relief.  Accordingly, the notice and the filed petition only mentioned the plea offer in passing.  Traverso later said that "at the time, [he] believed everything she said."  The superior court summarily denied Traverso's first PCR petition, and both the court of appeals and this Court denied review.  Traverso then unsuccessfully sought habeas corpus relief in federal court.

¶12           In 2020, Traverso filed a notice of successive PCR and, in the

_____

[4] At a minimum, trial courts should summarize for the record any off-the-record discussions concerning plea negotiations to facilitate appellate review, which can take place years later.

petition at issue here, asserted an IAC claim concerning the plea offer.[5] Traverso argued this IAC claim was not precluded because he did not personally waive it in the prior PCR proceeding. As asserted by Traverso, despite his knowledge of and desire to raise the claim in his first PCR proceeding, he "deferred to his initial PCR counsel" and "did not understand the concept of waiver in post-conviction proceedings." In contrast, the State argued that, because Traverso had raised IAC claims in his initial PCR proceeding, any successive IAC claims were waived under Rule 32.2(a)(3). The State further argued that this Court's decision in *Stewart v. Smith*, 202 Ariz. 446 (2002), required automatic preclusion of Traverso's successive IAC claim.

**¶13**     With respect to the timeliness of his successive PCR, Traverso acknowledged that his petition was untimely. Nonetheless, he argued that he was not at fault for the delay because his prior PCR counsel did not raise the IAC claim in the initial PCR petition. The State contended that Traverso's proffered explanation did not excuse the petition's untimeliness.

**¶14**     The superior court concluded Traverso's successive IAC claim was not precluded, rejecting the State's argument that both *Stewart* and Rule 32.2(a)(3) required automatic preclusion. The court found that "the right to aid of counsel in determining a plea" was "a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant," and Traverso had not waived it. Thus, the court found that Traverso's claim fell within Rule 32.2(a)(3)'s exception.

**¶15**     The court also found Traverso's claim was not untimely because he adequately explained that the delay was due to the extensive litigation of his initial PCR and federal habeas corpus proceedings, which concluded roughly two years before his successive PCR petition. And the court further noted the amount of time it took for current PCR counsel to review and evaluate the record of state and federal proceedings, consult with experts, and then prepare the petition.

---

[5] Traverso also filed a notice of actual innocence under Rule 32.1(h), which the superior court denied. He subsequently filed a cross-petition for review of the denial with the court of appeals, which granted review but denied relief. That claim is not before us.

**¶16**      At the evidentiary hearing subsequently ordered by the superior court, Traverso stated that he told his initial PCR counsel "everything [he] thought was worth putting in" the petition. However, his first "PCR counsel did not include these claims in the initial petition because *she* decided to focus on other deficiencies of trial counsel." In Traverso's words, she said "[w]e don't need all that . . . [b]ecause what [the prosecutor] did should get you right back in court." Following the evidentiary hearing, the court granted Traverso's petition for relief given his counsel's "failure to communicate the plea offer and to advise Traverso . . . about it." The court further ordered his conviction set aside and required the State to re-offer the plea agreement.

**¶17**      The State petitioned for review, and the court of appeals, in a divided opinion, held the superior court had abused its discretion by finding Traverso's claim was not precluded. *State v. Traverso*, 256 Ariz. 278, 286 ¶ 41 (App. 2023), *as amended* (Sept. 27, 2023). The court determined that *Stewart* required automatic preclusion of Traverso's successive IAC claim. *Id.* at 281–82 ¶¶ 12–13. Alternatively, the court found that the claim would nonetheless be precluded pursuant to *State v. Diaz*, 236 Ariz. 361 (2014). *Id.* at 282 ¶ 16. In particular, the court found that Traverso's claim did not raise a constitutional right that could only be waived knowingly, voluntarily, and personally by Traverso given that "defendants do not have a constitutional right to a plea bargain." *Id.* (quoting *Diaz*, 236 Ariz. at 362 ¶ 9). Because the court resolved the claim on preclusion grounds, it did not address timeliness. *Id.* at 283 ¶ 23.

**¶18**      Traverso petitioned this Court to review whether his successive IAC claim is subject to preclusion, which we granted. In our discretion, we also undertook review of whether his successive PCR notice was timely in the event his IAC claim is not precluded. Issues of preclusion and timeliness under Rule 32 are recurring issues of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## I. DISCUSSION

**¶19**      We will not disturb a PCR court's ruling on a PCR petition absent a clear abuse of discretion, *State v. Anderson*, 257 Ariz. 226, 230 ¶ 13 (2024), and we "examine a PCR court's findings of fact to determine if they are clearly erroneous," *State v. Pandeli*, 242 Ariz. 175, 180 ¶ 3 (2017). An

"erroneous ruling on a question of law, such as whether a post-conviction claim is or is not precluded, constitutes an abuse of discretion." *State v. Swoopes*, 216 Ariz. 390, 393 ¶ 4 (App. 2007).

## A. Preclusion Of Successive IAC Claims Under Rule 32.2(a)(3)

**¶20**      Traverso argues that his IAC claim is not precluded because it falls within the exception provided by Rule 32.2(a)(3) in that it "raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." Specifically, Traverso claims that because his counsel failed to advise him of the State's offer, he did not receive effective assistance of counsel in determining whether to accept a plea offer and plead guilty. Therefore, Traverso asserts that the right in question is of sufficient constitutional magnitude to require personal waiver of his claim in a previous notice of PCR.

**¶21**      Both the State and the court of appeals relied on *Stewart* and *Diaz* to conclude that Traverso's successive IAC claim is subject to automatic or per se preclusion or, in the alternative, did not implicate a constitutional right requiring personal waiver. Because *Stewart* and *Diaz* predated amendments to Rule 32 effective in 2020, we first consider them in the context of the current text of Rule 32.2(a)(3), which applies to Traverso's claim.

### 1. Automatic preclusion

**¶22**      In *Stewart*, this Court considered a certified question from the United States Supreme Court arising from a comment to the version of Rule 32.2(a)(3) then in effect:

> At the time of respondent's third Rule 32 petition in 1995, did the question whether an asserted claim was of "sufficient constitutional magnitude" to require a knowing, voluntary and intelligent waiver for purposes of Rule 32.2(a)(3) depend upon the merits of the particular claim or merely upon the particular right alleged to have been violated?

202 Ariz. at 447 ¶ 1 (internal citations omitted).

**¶23**         The comment provided that certain issues could be "deemed waived without considering the defendant's personal knowledge, unless such knowledge is specifically required to waive the constitutional right involved.  If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim."   Ariz. R. Crim. P. 32.2 cmt. to 1995 amendment.  This Court had yet to address the comment, and different panels of the court of appeals had issued inconsistent opinions concerning the appropriate analysis for determining whether a personal waiver was required.  *Compare State v. Espinosa*, 200 Ariz. 503, 505 ¶¶ 7–8 (App. 2001) (analyzing the rights allegedly violated), *with State v. Curtis*, 185 Ariz. 112, 115 (App. 1995) (analyzing the gravity of the alleged error without regard to the particular constitutional right allegedly violated), *and State v. French*, 198 Ariz. 119, 121 ¶ 5 (App. 2000) (same).

**¶24**         This Court's answer to the certified question stated that "whether an asserted ground is of 'sufficient constitutional magnitude' to require a knowing, voluntary and intelligent waiver for purposes of Rule 32.2(a)(3) does not depend upon the merits of the particular ground.  It depends merely upon the particular right alleged to have been violated." *Stewart*, 202 Ariz. at 450 ¶ 10 (internal citation omitted).

**¶25**         As cited by *Traverso*, 256 Ariz. at 281 ¶ 10, the final paragraph of *Stewart* further states:

> With some petitions, the [superior] court need not examine the facts. For example, *if a petitioner asserts ineffective assistance of counsel at sentencing, and, in a later petition, asserts ineffective assistance of counsel at trial, preclusion is required without examining facts.* The ground of ineffective assistance of counsel cannot be raised repeatedly. There is a strong policy against piecemeal litigation. *See State v. Spreitz*, 202 Ariz. 1 (2002).

*Stewart*, 202 Ariz. at 450 ¶ 12 (emphasis added).[6]  Despite acknowledging that the language in question was unnecessary for this Court's decision, the court of appeals nonetheless concluded "that the best reading of the

---

[6]   *Spreitz*'s prohibition against "piecemeal litigation," however, was discussed in the context of ending the practice of raising IAC claims via direct appeal.  202 Ariz. at 2 ¶ 7, 3 ¶ 9.  That practice no longer occurs.

language is that the court intended to provide an exception to the rule it established." *Traverso*, 256 Ariz. at 281 ¶ 11. And this Court's use of the word "required" in *Stewart* further supported the conclusion that successive IAC claims are subject to automatic or per se preclusion. *Id.*

**¶26** However, the court did not consider changes to Rule 32 following *Stewart*. In 2018, this Court established a Rule 32 Task Force ("Task Force") to review the PCR process. *In re Establishment of the Task Force on Rule 32 of the Arizona Rules of Criminal Procedure and Appointment of Members*, Admin. Order No. 2018-07 (2018). The resulting changes to Arizona's PCR rules call into question the validity of the language in *Stewart* regarding the automatic preclusion of successive IAC claims.

**¶27** The Task Force, created by administrative order of this Court, was charged with "identify[ing] possible substantive changes that improve upon the objectives of Rule 32 and the post-conviction relief process." *Id.* Part of the rationale behind creating the Task Force, though not explicitly referenced in the administrative order, was the need to address ongoing confusion around Arizona's preclusion rules. *See, e.g.*, *Spreitz*, 202 Ariz. at 3 ¶ 8 ("Admittedly, Rule 32 waters have become murky."). We ultimately approved the Task Force's proposed amendments to Rule 32, which took effect beginning January 1, 2020. *See In re Rule 32, Rules of Criminal Procedure*, Order No. R-19-0012 (2020).

**¶28** Notably, amendments to Rule 32.2(a)(3) explicitly incorporated the language from the comment to the earlier version. The Rule's plain language now instructs courts that defendants are precluded from relief for grounds waived in prior proceedings *unless* "the claim raises a violation of a constitutional right that can only be waived knowingly, voluntarily, and personally by the defendant." Significantly, the amendment did not include *Stewart*'s automatic preclusion language.

**¶29** Applying *Stewart*'s automatic preclusion for successive IAC claims in conjunction with Rule 32.2(a)(3) would require this Court to ignore the plain text of the only exception provided by the Rule. *See State v. Greene*, 255 Ariz. 37, 57 ¶ 76 (2023) (stating that "[w]e interpret court rules according to the principles of statutory construction" and therefore "we 'interpret rules of procedure by their plain meaning'" (first quoting *Phillips v. O'Neil*, 243 Ariz. 299, 301 ¶ 8 (2017); and then quoting *State v. Tillmon*, 222 Ariz. 452, 454 ¶ 8 (App. 2009))). And nothing in the text of Rule 32.2

supports treating successive IAC claims differently from other claims brought under Rule 32.1(a) for preclusion purposes. To put it plainly, applying *Stewart*'s preclusion requirement would require us to rewrite the Rule. We decline to do so. *See, e.g.*, *Mussi v. Hobbs*, 255 Ariz. 395, 402 ¶ 34 (2023) (declining to expand requirements of a statute).

**¶30** Furthermore, the language in paragraph 12 of *Stewart* requiring automatic preclusion of successive IAC claims is inconsistent with the express holding of *Stewart* and was irrelevant to answering the certified question before the Court. Moreover, there would have been no reason for us to later examine the facts underlying a successive IAC claim in *Diaz* and *Anderson* if we had adopted *Stewart*'s automatic preclusion premise. *See Diaz*, 236 Ariz. at 363 ¶¶ 10–13 (resolving successive IAC claim without reference to *Stewart*'s automatic preclusion language); *Anderson*, 257 Ariz. at 231–33 ¶¶ 20–26 (same). We therefore disavow the preclusion language in paragraph 12 of *Stewart*. Accordingly, the PCR court correctly found that *Stewart* did not automatically preclude Traverso's successive IAC claim. We thus now turn to whether his claim implicates a constitutional right requiring a knowing, voluntary, and personal waiver and consider the relevance of *Diaz*.[7]

2. Preclusion and nature of rights requiring a knowing, voluntary, and personal waiver

**¶31** Traverso described the right implicated by his IAC claim as "the right to be effectively counseled once the State offers a plea," and argued this right required his personal waiver in the initial PCR. The State, in reliance on *Diaz*, argued that because a defendant does not have a right to a plea offer, Traverso's claim did not involve a right that requires a personal waiver in a notice of PCR.

**¶32** The court of appeals, also relying on *Diaz*, disagreed with Traverso. The court explained that "every IAC claim necessarily alleges a violation of the right to effective counsel and our supreme court has repeatedly held that whether the defendant's personal waiver is required for an IAC claim to be precluded turns on the right affected by counsel's

---

[7] We note that the Task Force also discussed *Diaz* as part of its work. *In re Rule 32, Rules of Criminal Procedure*, No. R-19-0012, App. 1, Issues considered by the Task Force.

performance, not the general allegation of ineffective counsel." *Traverso*, 256 Ariz. at 282 ¶ 15. The court then noted that Traverso and the defendant in *Diaz* alleged violations of a substantially identical right to effective assistance of counsel in deciding whether to accept or reject a plea offer. *Id.* ¶ 16. Further citing to *Diaz*, the court concluded that the right in question was indistinguishable from the general right to effective assistance of counsel and noted this Court's statement in *Diaz* that defendants do not have the "right to a plea bargain." *Id.*

¶33 The defendant in *Diaz* twice timely filed the required notice of PCR, raising an IAC claim. Yet, in each instance, his assigned PCR counsel failed to timely file a PCR petition, leading the court to dismiss each matter with prejudice. *Diaz*, 236 Ariz. at 362 ¶¶ 3–4. Only after the defendant filed his third notice of PCR did his assigned PCR counsel timely file the petition, "which alleged that trial counsel's ineffective assistance led [the defendant] to reject the State's plea offers and proceed to trial." *Id.* ¶ 5. The PCR court summarily dismissed the petition under Rule 32.2(a)(3) because the defendant's IAC "claim had been both waived and finally adjudicated on the merits in [the] prior PCR proceeding[s]." *Id.* The court of appeals affirmed. *Id.*

¶34 This Court granted review to consider the waiver issue. *Id.* ¶ 6. Citing *Stewart*, we explained that "PCR counsel can waive most claims of trial error on the defendant's behalf by failing to assert them in a PCR petition" unless the claim is of "sufficient constitutional magnitude," in which case "the state must prove that the defendant knowingly, voluntarily, and intelligently waived the [PCR] claim."[8] *Id.* ¶ 8 (citing *Stewart*, 202 Ariz. at 449–50 ¶¶ 9–10). Thus, "[w]hether a defendant must personally waive an IAC claim to warrant preclusion under Rule 32.2(a)(3) depends on the particular right implicated by the allegedly ineffective representation." *Id.* ¶ 9 (citing *Stewart*, 202 Ariz. at 450 ¶ 12). And a "defendant must personally waive an IAC claim only if [PCR counsel's] alleged defective performance affected a right of sufficient constitutional magnitude." *Id.* Relying on our prior caselaw, we noted that "[t]he IAC claim [there] does not implicate such a right because defendants do not have a constitutional right to a plea bargain." *Id.*

---

[8] As this language reflects, *Diaz* was decided before the 2020 changes to Rule 32.

¶35        Regardless, we noted that "[t]he petition filed by Diaz's [third PCR] counsel was the *first* PCR petition filed on Diaz's behalf." We therefore concluded that "[b]ecause Diaz timely filed a notice of PCR seeking to assert an IAC claim, and he was blameless regarding his former [PCR counsels'] failures to file an initial PCR petition, we will not deem his IAC claim waived pursuant to Rule 32.2(a)(3)." *Id.* at 363 ¶ 11 (emphasis added). Thus, *Diaz* was ultimately decided on the basis that no PCR petition asserting an IAC claim had ever been filed until his third notice of PCR. Therefore, as there was no need to address the exception to the waiver requirement, there was no need for the Court to consider whether the basis for Diaz's IAC claim was of "sufficient constitutional magnitude." And *Diaz* was decided prior to the changes to Rule 32. *Diaz*, therefore, does not resolve whether Traverso's successive IAC claim implicates a constitutional right that required him to knowingly, voluntarily, and personally waive the IAC claim in the first PCR.

¶36        Only a narrow category of rights is of sufficient constitutional magnitude to require a defendant's knowing, voluntary, and personal waiver for purposes of Rule 32.2(a)(3). *See Stewart*, 202 Ariz. at 449 ¶ 9 (describing such a right as one that is "so inherently personal that it cannot be waived by defense counsel; only the defendant can waive it" (quoting *State v. Smith*, 197 Ariz. 333, 339 ¶ 17 (App. 1999))). In *Stewart*, this Court identified the rights to counsel, to a jury trial, and to a twelve-person jury[9] as some, though not all, of those rights requiring the defendant's knowing, voluntary, and (personal) waiver.[10] *Id.* ¶ 9 & n.1. The question before us, then, is whether Traverso's IAC claim alleges the violation of such a right.

¶37        Traverso's argument is that once the State extended a plea offer, he had a constitutional right to effective assistance of counsel in deciding whether to accept it. Specifically, Traverso argues that he rejected the State's plea offer—which he confirmed in the course of the *Donald* advisement—because his trial counsel was ineffective in not advising him of it. Traverso asserts that had he been informed about the plea offer, he would have accepted it and avoided the substantially harsher sentence he

---

[9]  Under article 2, section 23 of the Arizona Constitution, twelve-person juries are required in "criminal cases in which a sentence of death or imprisonment for thirty years or more is authorized by law." *See also State v. Soliz*, 223 Ariz. 116, 118 ¶ 6 (2009).

[10]  The 2020 amendments replaced "intelligent" with "personal."

received following his conviction at trial.

¶38        Understood in the context of this case, Traverso's argument is not that he had a "right to a plea bargain," but rather that he had a right to have his counsel fully inform him of the terms of the plea offer extended by the State, especially the sentencing terms and the consequences for not accepting it and going to trial, so that he could decide whether to plead guilty and waive a jury trial. We agree.[11]

¶39        "It is, of course, true that defendants have 'no right *to be offered* a plea . . . nor a federal right that the judge accept it.'" *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (alteration in original) (emphasis added) (quoting *Missouri v. Frye*, 566 U.S. 134, 148 (2012)). Regardless, "[e]ffective assistance of counsel is just as necessary at the plea bargaining stage as at trial." *Anderson*, 257 Ariz. at 233 ¶ 27 (quoting *State v. Anderson*, 147 Ariz. 346, 350 (1985)); *see also Lafler*, 566 U.S. at 162 ("During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970))). And "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168.

¶40        Furthermore, we observe that the right at issue reflects the fact that "[t]he ultimate decisions on whether to plead guilty, whether to waive jury trial, and whether to testify are to be made by the [defendant]." *State v. Lee*, 142 Ariz. 210, 215 (1984); *see also State v. Montoya*, 258 Ariz. 128, 161 ¶ 102 (2024) (same); *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (noting

---

[11] To maximize the utility of *Donald* advisements, we urge trial courts to further ensure that the record clearly and thoroughly reflects that a defendant has reviewed an offer with counsel. For example, the court should ask whether the defendant has previously discussed the plea offer with defense counsel, including review of the plea offer's terms regarding the sentence that can be imposed, any applicable sentence enhancements, and any collateral consequences. The court should also ask whether the defendant has reviewed with counsel the consequences of rejecting the offer and the potential sentence the defendant faces if convicted at trial, as well as an explanation of the constitutional rights the defendant will be required to waive to plead guilty. If not, recessing the matter to permit such a review will protect the rights of the defendant, the crime victim, *see* Ariz. Const. art. 2, § 2.1(A)(10), and the interests of the state.

defendant's "ultimate authority to make certain fundamental decisions" about his case, including the decision "whether to plead guilty"). And whether to accept a tendered plea offer and plead guilty also implicates a defendant's Sixth Amendment "right to make his defense," which "'is personal,' and . . . 'must be honored out of that respect for the individual which is the lifeblood of the law.'" *McCoy*, 584 U.S. at 421 (quoting *Faretta v. California*, 422 U.S. 806, 819–20, 834 (1975)). We also underscore the extraordinary nature of counsel's abject failure to relate the terms of the offer and attendant consequences. *Cf. Diaz*, 236 Ariz. at 363 ¶¶ 12–13 (acknowledging "this peculiar scenario" concerning the utter failure of two different PCR counsel to file a petition after filing notices of PCR in concluding no preclusion of IAC claim); *Anderson*, 257 Ariz. at 232–33 ¶¶ 25–26 (concluding that an IAC claim was not precluded given the "extremely rare set of circumstances" and the "systemic failure" of counsel and courts regarding the availability of parole).

¶41　　　　We therefore hold that here, where Traverso's counsel offered such paltry information, the right to be sufficiently informed of the prosecution's plea offer to decide whether to accept it, plead guilty, and waive a jury trial is of sufficient constitutional magnitude to require the defendant's knowing, voluntary, and personal waiver for purposes of Rule 32.2(a)(3). *See Donald*, 198 Ariz. at 418 ¶ 46 (noting the significant constitutional nature of the loss of a favorable plea offer due to the ineffective assistance of counsel); *see also State v. Nunez-Diaz*, 247 Ariz. 1, 4 ¶ 11 (2019) (stating that "[w]hen the consequences of a plea are clear, however, 'the duty to give correct advice is equally clear'" (quoting *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010))). Consequently, Traverso's successive IAC claim falls within Rule 32.2(a)(3)'s exception to preclusion.[12]

---

[12] Our holding today is distinct from our recent decision in *Anderson*. *Anderson* concerned a successive IAC claim in which the defendant asserted "that [the defendant's counsel] erroneously advised him that he was parole eligible, which caused him to reject an allegedly offered plea agreement." 257 Ariz. at 229 ¶ 1. There, we concluded that Anderson's successive IAC claim was "not cognizable as a 'known' claim" before he raised it in his notice of PCR, which was "the first time he could have reasonably" done so. *Id.* at 232 ¶ 25. We therefore held that Anderson's claim was not precluded because he had not waived it. *Id.* ¶¶ 24–25. Thus, the case did not concern the exception to Rule 32.2(a)(3) at issue here and we limit the reasoning and holding of *Anderson* to its facts.

¶42　　　We reiterate, though, our admonition that "[o]ur preclusion rules require a defendant to raise all known claims for relief in a single petition to prevent endless trial-court reviews of the same case," especially involving IAC claims. *Anderson*, 257 Ariz. at 231 ¶ 21. And we note that non-precluded Rule 32.1(a) claims are still subject to review for summary disposition pursuant to Rule 32.11(a) and the requirements for timely filing under Rule 32.4(b)(3)(A). Because his claim is not precluded, we turn next to consider the timeliness of Traverso's notice for PCR.

## B. Timeliness

¶43　　　Rule 32.4(b)(3)(A) requires defendants to file notices of PCR brought under Rule 32.1(a) "within 90 days after the oral pronouncement of sentence or within 30 days after the issuance of the mandate in the direct appeal, whichever is later." But, under Rule 32.4(b)(3)(D), "[t]he court *must* excuse an untimely notice requesting post-conviction relief filed under subpart (3)(A) if the defendant adequately explains why the failure to timely file a notice was not the defendant's fault." (Emphasis added.) As explained above, we review the PCR court's ruling on timeliness for abuse of discretion. *Anderson*, 257 Ariz. at 230 ¶ 13.

¶44　　　Here, the PCR court concluded Traverso had satisfactorily explained the delay in bringing his claim and refused to bar it as untimely. The court correctly identified Rule 32.4(b)(3)(D)'s "adequate explanation" standard and issued a detailed ruling explaining its reasoning. The court noted that Traverso's petition and affidavit explained his knowledge of the claim, his first PCR counsel's decision not to include the claim in the petition, and Traverso's lack of a knowing, voluntary, or personal waiver of the claim. And the court specifically pointed out that the "State [did] not dispute Traverso's sworn statements." Finally, the court explained that Traverso provided "good reasons" for the timing of his successive petition based on the timeline of his initial state PCR and federal habeas proceedings. Those proceedings concluded roughly two years before Traverso brought his successive IAC claim, and the court noted that Traverso's counsel had exercised "due diligence" in reviewing the claim and preparing the petition, and that "a majority of the delay was due to factors beyond Traverso's or counsel's control."

¶45　　　Given the applicable standard of review and the superior court's detailed explanation of its ruling, we conclude the court did not

abuse its discretion in finding that Traverso "adequately explained" the delay in raising his claim. We therefore affirm the superior court's conclusion and likewise hold Traverso's claim was not untimely.

## II. CONCLUSION

¶46        For the foregoing reasons, we affirm the superior court's rulings on preclusion and the timeliness of Traverso's notice of PCR. We remand to the court of appeals to consider the issues raised in the State's petition not addressed by the court. We also vacate paragraphs 9–23 of the court of appeals' opinion. We express no view as to the merits of Traverso's IAC claim.